# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**MARY KARICKHOFF, WIDOW OF DALE KARICKHOFF,**
**Claimant Below, Petitioner**

**FILED**

December 11, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-1036** (BOR Appeal No. 2054222)
(Claim No. 910071309)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**BETH ENERGY MINES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mary Karickhoff, widow of Dale Karickhoff, by Counsel J. Thomas Greene Jr. appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). The West Virginia Office of Insurance Commissioner, by Counsel Karin L. Weingart, filed a timely response.

The issue on appeal is dependent's benefits. The claims administrator denied a request for dependent's benefits on September 14, 2017. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its April 12, 2019, Order. The Order was affirmed by the Board of Review on October 18, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Karickhoff was a coal miner for thirty-five years. He was first examined by the Occupational Pneumoconiosis Board on May 13, 1986, and found to have 50% impairment due to occupational pneumoconiosis. He was reexamined on July 25, 1987, and found to have 60% impairment. Mr. Karickhoff was granted a 60% permanent partial disability award on August 17, 1989. Mr. Karickhoff was granted a permanent total disability award on October 19, 1998.

Treatment notes from Monongalia General Hospital indicate Mr. Karickhoff was treated between August 4, 2005, and September 13, 2016, for chest pain, shortness of breath, hypertension, coronary artery disease, diabetes, chronic obstructive pulmonary disease, hyperlipidemia, black lung, and asbestos exposure. On April 7, 2008, Mr. Karickhoff was admitted to United Hospital Center for a blood transfusion, echocardiogram, and an esophagogastroduodenoscopy for a gastrointestinal bleed with anemia.

Treatment notes by Ronald Mudry, M.D., from October 21, 2010, through December 16, 2014, indicate Mr. Karickhoff was treated for chronic obstructive pulmonary disease with significant small airway disease, left lower lobe pleural thickening, history of coal and asbestos exposure, coronary artery disease, occupational pneumoconiosis, and obstructive sleep apnea. An April 1, 2011, chest x-ray showed hyperinflation consistent with chronic obstructive pulmonary disease. Dr. Mundry completed a pulmonary function report on April 25, 2011, which showed a severe obstructive lung defect.

A November 28, 2011, treatment note from Monongalia General Hospital indicates Mr. Karickhoff was seen for chest pain. X-rays showed chronic obstructive pulmonary disease and a six-millimeter pulmonary nodule on the left. A chest CT scan was performed on November 29, 2011, which showed mild emphysematous changes and ectasia of the thoracic aorta.

Discharge summaries from Monongalia General Hospital indicate Mr. Karickhoff was seen on December 1, 2011, for coronary artery disease requiring angioplasty. He was discharged with diagnoses of acute respiratory failure requiring intubation, hypotensive shock, acute gastrointestinal bleed, acute myocardial infarction, acute chronic obstructive pulmonary disease exacerbation, mild cardiomyopathy, and moderate aortic stenosis, insufficiency, and root dilation. A January 12, 2013, chest x-ray showed a stable granuloma in the left lung. A chest CT scan showed endotracheal and nasal tubes and a post-inflammatory granuloma. An August 27, 2013, cardio stress test showed a prior myocardial infarction.

Mr. Karickhoff was treated at Monongalia General Hospital Emergency Department on March 2, 2014, for acute exacerbation of chronic obstructive pulmonary disease, chest pain, and coronary artery disease. A CTA of the cardiac structure was performed on March 7, 2014, and showed moderate calcified atherosclerotic disease of the aortic valve. There was mucous plugging in the lower lobe bronchi, mild scarring in the lung fields, and nonflow limiting dissection of the right iliac artery. A March 8, 2014, chest x-ray showed no acute cardiopulmonary process and chronic lung changes.

On March 11, 2014, Mr. Karickhoff was discharged from a Monongalia General Hospital with diagnoses of severe aortic stenosis, acute on chronic respiratory failure, severe chronic

obstructive pulmonary disease without exacerbation, acute on chronic congestive heart failure, diabetes, and hypomagnesemia. A transesophageal echo showed severe symptomatic aortic stenosis on April 2, 2014.

A September 15, 2016, chest x-ray showed atelectasis or infiltrate in the left lower lung. On September 18, 2016, Mr. Karickhoff was admitted to Monongalia General Hospital. He went into respiratory arrest and was intubated. Mrs. Karickhoff then went into bradyarrhythmia and passed away. A chest x-ray showed interval development of alveolar edema pattern consistent with acute heart failure, persistent left base consolidation and a small left pleural effusion with no pneumothorax. Mr. Karickhoff's Death Certificate lists the cause of death as acute respiratory failure, cardiogenic shock, and renal failure.

On July 20, 2017, the Occupational Pneumoconiosis Board found that occupational pneumoconiosis was not a material, contributing factor in Mr. Karickhoff's death. It was noted that x-rays and CT scans showed moderate emphysema. The Board found insufficient pulmonary parenchymal or pleural disease to confirm a diagnosis of occupational pneumoconiosis. The claims administrator denied a request for dependent's benefits on September 14, 2017.

The Occupational Pneumoconiosis Board testified in a hearing before the Office of Judges on March 6, 2019. John Willis, M.D., testified on behalf of the Board that Mr. Karickhoff's chest CT scans mostly showed moderate emphysema. There were no pleural or parenchymal changes to make a diagnosis of occupational pneumoconiosis. Dr. Willis stated that he disagreed with the Board's 1986, 1989, and 1994 x-ray interpretations because CT scans are more reliable. Jack Kinder, M.D., testified on behalf of the Board that Mr. Karickhoff had a thirty-five-year history of occupational exposure. He also had a thirty-five to forty-year smoking history. Dr. Kinder opined that Mr. Karickhoff suffered from pulmonary impairment but also had severe aortic stenosis and a cardiac history of pulmonary disease. Dr. Kinder opined that Mr. Karickhoff's death was primarily cardiac in nature. Though pulmonary impairment can contribute to cardiac deaths, there was no evidence of occupational pneumoconiosis in this case. Mallinath Kayi, M.D., also of the Occupational Pneumoconiosis Board, concurred.

The Office of Judges affirmed the claims administrator's denial of dependent's benefits in its April 12, 2019, Order. It found that Mr. Karickhoff was first examined by the Occupational Pneumoconiosis Board in 1986 and found to have 50% impairment attributable to occupational pneumoconiosis. In 1987, the Board found 60% impairment. Mr. Karickhoff was granted a permanent total disability award in 1998. The Office of Judges found that the Death Certificate lists the cause of death as acute respiratory failure and cardiogenic shock. The Occupational Pneumoconiosis Board found on July 20, 2017, that occupational pneumoconiosis was not a material contributing factor in Mr. Karickhoff's death. It elaborated in a March 6, 2019, hearing that chest CT scans showed moderate emphysema. There were no pleural or parenchymal changes to diagnose occupational pneumoconiosis. Dr. Willis opined that the prior findings of the Occupational Pneumoconiosis Board were incorrect. Those findings were based on x-rays, and Dr. Willis stated that CT scans are more reliable. The Office of Judges concluded that the Occupational Pneumoconiosis Board's findings were not clearly wrong and affirmed the claims administrator's

rejection of the claim. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on October 18, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-6a, "the Office of Judges shall affirm the decision following hearing unless the findings of the Board are clearly wrong in view of the reliable, probative, and substantial evidence on the whole record." Mrs. Karickhoff has failed to show that the Board's decision was clearly wrong.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 11, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING:**

Justice Margaret L. Workman

4